IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

WILLIAM RAY GEORGE,        )
                           )
        Petitioner,        )
                           )        CIVIL ACTION NO.
v.                         )        2:17-CV-337-WKW
                           )        [WO]
UNITED STATES OF AMERICA,  )
                           )
        Respondent.        )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

William Ray George is before the court on his motion to vacate, set aside, or correct

sentence under 28 U.S.C. § 2255.  CIV Doc. 1.[1]  For the reasons that follow, the court finds

George's § 2255 motion should be denied without an evidentiary hearing and dismissed

with prejudice.

## I.   BACKGROUND

On August 31, 2015, George pled guilty to an information charging him with receipt

of child pornography in violation of 18 U.S.C. § 2252A(a)(2).  CR Doc. 16.  George's plea

was entered under a plea agreement containing a waiver of his right to appeal or collaterally

attack his sentence except on grounds of ineffective assistance of counsel or prosecutorial

---

[1] References to document numbers assigned by the Clerk in the instant civil action, Civil Action
No. 2:17-CV-337-WKW, are designated as "CIV Doc." References to document numbers assigned
by the Clerk in the underlying criminal case, Case No. 2:15-CR-344-WKW, are designated as "CR
Doc." Pinpoint citations are to the page of the electronically filed document in the court's CM/ECF
filing system, which may not correspond to pagination on the hard copy of the document presented
for filing.

misconduct. CIV Doc. 9-4 at 8.  On May 11, 2016, the district court sentenced George to 84 months in prison.[2]  CIV Doc. 9-7.  George did not appeal.

On May 18, 2017, George, proceeding *pro se*, filed this § 2255 motion asserting the following claims:

1. His sentence of imprisonment violates the Eighth Amendment prohibition against cruel and unusual punishment because his conduct resulted from his mental illness—specifically, Asperger's syndrome.

2. The district court based his sentence on inaccurate information about the BOP's ability to provide him with adequate treatment for his mental illness.

3. The government engaged in misconduct by allowing the district court to believe he would receive adequate treatment for his mental illness in prison.

4. His counsel was ineffective for failing to discover or argue that the BOP is incapable of providing him with adequate treatment for his mental illness.

CIV Doc. 1 at 4–8; CIV Doc. 1-1 at 1–5.

## II.   DISCUSSION

### A.   General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under 28 U.S.C. § 2255 are limited. A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the

---

[2] George's 84-month sentence resulted from a downward variance granted by the district court from George's calculated Sentencing Guidelines range of 121 to 151 months. *See* CIV Doc. 9-7 at 47–57.

maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

**B.   Standard for Reviewing Claims of Ineffective Assistance of Counsel**

A claim of ineffective assistance of counsel must be evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 689.  Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable.  *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted). The court will "avoid second-guessing counsel's performance:  It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted). "Given the strong presumption in favor of competence, the

petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one." *Id.*

As noted, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id.* at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id.* at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

## C.   Claims Regarding Sentence

### 1.   *Eighth Amendment Claim*

George claims that his sentence of imprisonment violates the Eighth Amendment prohibition against cruel and unusual punishment because, he says, his conduct resulted from his mental illness—specifically, his Asperger's syndrome, a form of high-functioning autism.[3]  CIV Doc. 1 at 4; CIV Doc. 1-1 at 1.  In this regard, George argues that he was punished for a "status crime" (his mental illness), which is unconstitutional under the Eighth Amendment.  *See* CIV Doc. 1-1 at 1.  In support of this argument, George cites the district court's statement at sentencing that his case involved "an autism person with a sex offender problem" as opposed to "a sex offender with autism problem."  *See* CIV Doc. 9-7 at 51–52. According to George, the court's statement indicated that it believed his actions were the product of his mental illness, "rather than because of intentional criminal actions." *See* CIV Doc. 1-1 at 1.

a.   Waiver Provision in Plea Agreement

The government argues that George's Eighth Amendment claim is barred by the waiver provision in his plea agreement. CIV Doc. 9 at 19–22. The court agrees.

The written plea agreement contained a waiver provision with the following language:

Waivers of Right to Appeal or Collaterally Attack the Sentence

a.   *Defendant's Waiver*.  By entering into this Plea Agreement, the defendant knowingly and voluntarily waives any and all of his rights under 18 U.S.C. § 3742 to appeal the sentence in this case. The defendant specifically waives his right to appeal the sentence on the grounds that the Sentencing Guidelines are in any respect unconstitutional, or that any fact

---

[3] Asperger's syndrome is a "form of autism involving pervasive developmental disorders." *Taylor v. Food World, Inc.*, 133 F.3d 1419, 1421 (11th Cir. 1998).

found by the Court for sentencing was not alleged in the Information, admitted by the defendant, found by a jury, or found beyond a reasonable doubt. The defendant further waives his right to appeal the conviction and sentence on any other ground, including any challenge to the reasonableness of the sentence, and waives the right to collaterally attack his sentence in any post-conviction proceeding.

    b.  *Exceptions*. This waiver does not include (and the defendant expressly reserves) the right to appeal or collaterally attack his sentence on the grounds of ineffective assistance of counsel or prosecutorial misconduct. The defendant is released from this waiver if the Government files an appeal under 18 U.S.C. § 3742(b).

CIV Doc. 9-4 at 8.

An appeal waiver or collateral attack waiver is valid if a defendant enters it knowingly and voluntarily. *Williams v. United States*, 396 F.3d 1340, 1341 (11th Cir. 2005); *United States v. Bushert*, 997 F.2d 1343, 1350–55 (11th Cir. 1993). *See United States v. Bascomb*, 451 F.3d 1292, 1294 (11th Cir. 2006) (collecting cases). To enforce such a waiver, the government must demonstrate either that (1) the court specifically questioned the defendant about the waiver during the change of plea colloquy, or (2) the record shows that the defendant otherwise understood the full significance of the waiver. *Bushert*, 997 F.2d at 1351.

George's written plea agreement included a collateral attack waiver of sentencing issues, except for claims of ineffective assistance of counsel and prosecutorial misconduct. CIV Doc. 9-4 at 8. The transcript of George's guilty plea hearing reflects that the magistrate judge specifically questioned George about the waiver provision and confirmed that George understood its terms. CR Doc. 16 at 11.  Thus, the record shows—and George does not disprove—that the collateral attack waiver in the plea agreement was knowing and

voluntary. *See Bushert*, 997 F.2d at 1351. Consequently, George's claim that his sentence violates the Eight Amendment's prohibition against cruel and unusual punishment is barred by the collateral attack waiver.

b.   Procedural Default

George's Eighth Amendment claim also is procedurally defaulted. Where a substantive claim is not advanced on direct appeal, it is procedurally barred in a § 2255 proceeding. *See McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011); *Reece v. United States*, 119 F.3d 1462, 1467 n.9 (11th Cir. 1997); *Mills v. United States*, 36 F.3d 1052, 1055–56 (11th Cir. 1994). Because George did not raise his Eighth Amendment claim in a direct appeal, it is procedurally defaulted.

i.   *Cause and prejudice*

A petitioner can avoid the procedural bar of a defaulted claim by showing both cause for failing to raise the claim on direct appeal and actual prejudice arising from that failure. *See United States v. Frady*, 456 U.S. 152, 167–68 (1982); *Mills*, 36 F.3d at 1055. To satisfy the "cause" exception to procedural default, a petitioner "must show that some objective factor external to the defense prevented [petitioner] or his counsel from raising his claim on direct appeal and that this factor cannot be fairly attributable to [petitioner's] own conduct." *Lynn*, 365 F.3d at 1235. To establish prejudice, a petitioner must show, "not merely that the error[ ] [claimed] created a possibility of prejudice, but that [it] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170.

7

Although afforded an opportunity to do so, George has asserted no grounds as cause for his failure to raise his Eighth Amendment claim on direct appeal. Consequently, the cause-and-prejudice exception does not prevent application of the procedural bar to this defaulted claim.

### ii.   Actual innocence

A colorable claim of actual innocence may provide a gateway to review of an otherwise procedurally barred claim. *Lynn*, 365 F.3d at 1234; *see House v. Bell*, 547 U.S. 518, 538 (2006); *Frady*, 456 U.S. 152 at 167–68. A petitioner asserting actual innocence as a gateway to review of a procedurally barred claim must establish that, in light of new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "[This] standard is demanding and permits review only in the 'extraordinary' case." *House,* 547 U.S. at 538.

The Supreme Court observed in *Schlup*:

[A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. . . .  To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

513 U.S. at 324.

George asserts his actual innocence, arguing that because his conduct resulted from his Asperger's syndrome, not from his "intentional acts," he is innocent of committing a

crime.  *See* CIV Doc. # 1-1 at 1; CIV Doc. 17 at 8.  George's argument is one of legal, not factual, innocence.  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623–24 (1998).  A petitioner who argues that his conduct is mitigated by his mental illness—particularly where such argument is *not* predicated on a defense of insanity—presents, at best, a claim of legal innocence, not factual innocence.  *See Ellis v. Hargett*, 302 F.3d 1182, 1186 n.1 (10th Cir. 2002) (argument that conduct is justified or mitigated by doctrine of self-defense or heat of passion presents a claim of legal innocence, not factual innocence); *see also Rozzelle v. Sec'y, Florida Dep't of Corr.*, 672 F.3d 1000, 1013–14 (11th Cir. 2012) ("[C]ircuit courts differ on whether a complete affirmative defense to a crime—such as insanity or self-defense—shows factual or only legal innocence.").

Under the Insanity Defense Reform Act of 1984, 18 U.S.C. §§ 17, 4241–47, a defendant may be found not guilty by reason of insanity only if, after the government proves all the elements of the charged offense beyond a reasonable doubt, the defendant proves by clear and convincing evidence that, "as a result of a severe mental disease or defect, he was unable to appreciate the nature and quality or wrongfulness of his acts."  18 U.S.C. § 17.  Even if George asserted an insanity defense as a basis for his claim of actual innocence, he presents no evidence—much less "new reliable evidence," *Schlup*, 513 U.S. at 324—that he suffered from a severe mental disease or defect that rendered him unable to appreciate the nature and quality or wrongfulness of his acts. Regarding George's negation-of-intent argument—i.e., his contention that his Aspberger's syndrome negated

his intent to commit an unlawful act—it is well settled that "[o]nly in the rare case" will a defendant be so incapacitated by mental disease or defect as to negate the *mens rea* element of a crime.  *United States v. Cameron*, 907 F.2d 1051, 1066 (11th Cir. 1990).

George's Asperger's syndrome does not support an insanity defense and does not sustain a claim of actual innocence. Consequently, his actual innocence claim does not provide a gateway to review of his procedurally barred Eighth Amendment claim.

c.   Merits of Eighth Amendment Claim

Even if George's Eighth Amendment claim is not waived under his plea agreement or otherwise procedurally barred, it entitles him to no relief.  Contrary to his assertion, CIV Doc. 1-1 at 1, George was not punished for a "status crime."  Consequently, his Asperger's syndrome is not grounds for finding that his sentence of imprisonment violates the Eighth Amendment prohibition against cruel and unusual punishment.

George was punished not for his status as someone with Asperger's syndrome, but rather for his conduct.  The statute under which he was convicted criminalized the receipt of child pornography, not the status of having a mental disorder. *Compare Robinson v. California*, 370 U.S. 660 (1962) (holding that statute criminalizing addiction violated the Eighth Amendment).  *See Joshua v. Adams*, 231 F. App'x 592, 594 (9th Cir. 2007) ("Joshua also contends that the state court ignored his mental illness [schizophrenia], which rendered him unable to control his behavior, and his sentence was actually a penalty for his illness. . . . This contention is without merit because, in contrast to *Robinson*, where a statute specifically criminalized addiction, Joshua was convicted of a criminal offense separate

10

and distinct from his 'status' as a schizophrenic."); *see also Joel v. City of Orlando*, 232 F.3d 1353, 1362 (11th Cir. 2000) ("A distinction exists between applying criminal laws to punish conduct, which is constitutionally permissible, and applying them to punish status, which is not."); *United States v. Benefield*, 889 F.2d 1061, 1064 (11th. Cir. 1989) ("The considerations that make any incarceration unconstitutional when a statute punishes a defendant for his status are not applicable when the government seeks to punish a person's actions."); *United States v. Black*, 116 F.3d 198, 200–01 (7th Cir. 1997) (rejecting claim that defendant's convictions for distribution, receipt, and possession of child pornography were unconstitutional because they were based on his status as a pedophile and/or ephebophile, which compelled him to collect child pornography; holding that defendant's convictions were not based on his status as a pedophile and/or ephebophile and there was no evidence that defendant's actions were involuntary or otherwise uncontrollable).

As suggested in this court's discussion of George's actual-innocence claim, the fact that George had a mental disorder when he committed his offense did not absolve him of criminal culpability for his acts. And George's guilty plea to the offense was dispositive as to that criminal culpability. Because George was punished for his conduct, not his status, his Eighth Amendment claim fails on the merits.

### 2. *BOP's Ability to Provide Adequate Treatment*

George claims that the district court based his sentence on inaccurate information about the BOP's ability to provide him with adequate treatment for his Aspberger's. CIV Doc. 1 at 5; CIV Doc. 1-1 at 2–3.

As with George's Eighth Amendment claim, the government asserts that this claim is barred by the waiver provision in George's plea agreement. CIV Doc. 9 at 19–22. The court agrees and, for the reasons set forth in the court's discussion above of the waiver's effect on George's Eighth Amendment claim, it finds that George's claim that the district court based his sentence on inaccurate information is barred by the collateral attack waiver in the plea agreement.

Even if this claim is not waived under George's plea agreement, it entitles George to no relief. Sentences based on erroneous and material information violate due process. *United States v. Darby*, 744 F.2d 1508, 1532 (11th Cir. 1984); *United States v. Sjeklocha*, 114 F.3d 1085 (11th Cir. 1997). In George's case, the district court did not rely on inaccurate material information in determining George's sentence. Before sentencing, the government submitted to the district court literature from the BOP outlining the BOP's capabilities to provide sex offender and autism/Asperger's syndrome treatment. *See* CIV Doc. 9-8. This literature confirmed that the BOP was "able to accommodate the programming needs" of sex offenders diagnosed with Asperger's syndrome. CIV Doc. 9-8 at 3; CIV Doc. 9-9 at 5. At sentencing, the district court stated:

> I've read the materials you [the government] submitted. It says that each offender is treated according to their needs, you know, as far as I can tell, from day one. In other words, if he had a serious case of cancer, you know, that needed medical treatment from day one, the Bureau of Prisons would provide treatment for cancer beginning day one. That's what their literature says, and that's the way I take it.

CIV Doc. 9-7 at 45.

In imposing George's sentence, the district court indicated that the sentence was informed by the court's understanding of George's psychological assessments as to his autism/Asperger's syndrome, and the court's consideration of the BOP literature on the BOP's treatment capabilities. *See* CIV Doc. 9-7 at 54–57. There is no indication that the BOP literature was erroneous, apart from George's present assertion that he is not receiving adequate treatment for his mental illness in prison. In response to this contention, the government contacted the BOP to determine whether George is receiving treatment as outlined in the literature considered by the district court. *See* CIV Doc. 9 at 43. The BOP responded that the literature considered by the court at sentencing was accurate and that the BOP is following the procedures set forth in that literature. *See* CIV Doc. 9-9 at 2. Further, the BOP indicated that George was offered mental health treatment and sex offender treatment upon his arrival in prison, but George refused all such treatment. *Id.* at 2–3.[4]

In view of the above, the record does not support George's claim that the BOP is incapable of providing him with treatment for his mental illness or that the district court based his sentence on inaccurate information about the BOP's treatment capabilities. George's claim is without merit and entitles him to no relief.

### 3. *Government Misconduct*

---

[4] To the extent George presents a claim challenging the BOP's alleged refusal to provide him with treatment for his mental illness, George's claim is not cognizable in a § 2255 motion. *See Fernandez v. United States*, 941 F.2f 1488, 1494–95 (11th Cir. 1991).

George claims that the government engaged in misconduct by allowing the district court to believe that he would receive adequate treatment for his Aspberger's in prison. *See* CIV Doc. 1 at 7–8; CIV Doc. 1-1 at 4–5.

This claim is procedurally defaulted because George did not raise it in a direct appeal. *See McKay*, 657 F.3d at 1196; *Reece*, 119 F.3d at 1467 n.9; *Mills*, 36 F.3d at 1055–56. Although afforded an opportunity to do so, George asserts no grounds as cause excusing his failure to raise this claim on direct appeal. And, as discussed previously, George has not presented a viable claim of actual innocence. Consequently, his government misconduct claim is procedurally barred from review in this proceeding.

Even if this claim were not procedurally barred, it entitles George to no relief. George cannot show that the government committed any misconduct. As indicated above, before sentencing, the government submitted to the district court literature from the BOP outlining the BOP's mental health treatment procedures. *See* CIV Doc. 9-8; CIV Doc. 9-11 at 2. The district court indicated that its sentence was informed by its consideration of this literature. The BOP confirmed that this literature was accurate and is being followed by the BOP. The BOP also confirmed that mental health treatment was offered to George, but George refused that treatment. Other than George's bare assertions, there is no support for his claim. There is no evidence of government misconduct in George's case. Therefore, this claim entitles George to no relief.

**D.   Ineffective Assistance of Counsel**

George claims that his counsel was ineffective for failing to discover or argue that the BOP is incapable of providing him with adequate mental health treatment.  *See* CIV Doc. 1 at 10; CIV Doc. 1-1 at 4; CIV Doc. 17 at 8.  As indicated above, George fails to establish that the BOP is incapable of providing him with adequate mental health treatment. He therefore cannot show that his counsel performed deficiently or that he was prejudiced by counsel's performance. After demonstrating neither deficient performance nor prejudice, George is entitled to no relief on his claim of ineffective assistance of counsel.

### III.  CONCLUSION

Accordingly, for the reasons set forth above, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Petitioner William Ray George be DENIED and this case DISMISSED with prejudice.

It is further

ORDERED that the parties shall file any objections to this Recommendation on or before August 19, 2020.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations under the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error

15

or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R.

3-1.  *See Stein v. Lanning Securities, Inc*., 667 F.2d 33 (11th Cir. 1982*). See also Bonner*

*v. City of Prichard,* 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE on this the 4th day of August, 2020.

/s/ Susan Russ Walker
Susan Russ Walker
Middle District of Alabama

16